The 4th district appellate court of the state of Illinois has reconvened. The Honorable Peter C. Cavanaugh presiding. Good afternoon, we'll call number 4-24-0795. David S. Richard L. Durbin versus Nancy L. Durbin individually and as former trustee. Counsel for the appellant, would you please state your name for the record? My name is Frank H. Byers II. Thank you, and counsel for the appellate? Jeffrey Alan Riva, R-Y-V-A. Thank you, Mr. Byers, you may proceed. Thank you, may it please the court? Mr. Riva, I'd like to reserve some time at the end for rebuttal. Very well. This is the second time this case is before this court. In the first appeal, which was 04-21-0437, this court filed its opinion on April 14, 2023. The court stated in its opinion, accordingly, we affirm the trial court in all aspects, excuse me, respects, except for the award of $11,000 for the loss of investment income, which we reverse. Because that award affects the calculation of prejudgment interest and may have affected the amount of punitive damage of the award, we remand for recalculation of these amounts. This appeal presents three issues to be determined by this court. First, the issue is the calculation of the amount of prejudgment interest. Second issue is the determination of the amount of punitive damages. And the third issue is the commencement date for post-judgment interest. The determination of prejudgment interest I'll address first. It requires four distinct items to calculate the interest. First, the prejudgment interest rate, which is 5%. That's not being disputed. The second is the various amounts of principal loss upon which the interest is to be calculated. The various amounts were incurred at different dates, both before and after this case was filed. But those amounts are not disputed. The third item that's required is the stop date to end prejudgment interest. And that is March 1, 2021. And that date is not disputed. So of the four items required, three of them are not disputed. The fourth is disputed, and that is the start date for the commencement of interest. Nancy asserts that the start date for each element of principal loss was admitted into evidence at the trial on January 29, 2021. The start dates were presented to the trial court and her motion concerning prejudgment interest before the order entered in April of this year. The date for each item of loss which Nancy provided to the trial court is not disputed either by the defendants. So there is no dispute as to each of the individual start dates, or excuse me, the individual dates of the loss. The date that it starts is disputed, but not the date that the loss was incurred. Now, Nancy asserts that the trial court should use as the commencement date for each element of loss the date that the loss was actually incurred based upon the evidence submitted to the trial court. And what actually happened in this case is the trial court created an artificial date exactly five years before March 1, excuse me, 2021, and applied it to every single principal loss. Nancy asserts that this calculation fails to comply with the court's order that it redetermined punitive damages award. We believe, Nancy believes, that punitive damage, or excuse me, not the punitive, the prejudgment interest award should be based upon the actual evidence at trial. Nancy asserts that the start date should be each and every single individual item that they have proven to be a loss on the date they proved it to be a loss. So therefore, there'd be various start dates to each one of the elements. And we believe, Nancy believes, that this conforms to this trial court's, or excuse me, this appellate court's order, and that the trial court, in failing to do that, violated this court's order. The second issue is determination of the amount of punitive damages, and that really spins on whether attorney's fees are considered punitive damages or not considered punitive damages. And the issue impacts the outcome in this case in more than one way. First off, procedurally, the trial court in the original trial entered its order of March 1, 2021, and then reserved the issue of punitive damages, and including attorney's fees, for later determination, which it then later determined in its July 2021 order. So there's, the trial court did not have a trial over attorney's fees in the initial trial. It treated it more as courts traditionally treat punitive damages, which are entered at a later date. So, but the issue whether punitive damages is a part, or excuse me, attorney's fees are a part of punitive damages, its first impact is what is the amount, or the percentage amount, that this court reversed in the original award, when it reversed the award of $11,000. The plaintiff's losses, as affirmed on appeal, are conversion in the amount of $22,489.49, waste in the amount of $4,556.13, survey costs in the amount of $1,900, and bank record production costs in the amount of $641.25. These affirmed damages total $29,586.87. The reverse damages are $11,000. Together, the affirmed damages and the reverse damages total $40,586.87. Therefore, the reverse damages, the $11,000, are 27.1% of the original total damages. So, if you do not include the attorney's fees as part of the original damages, and they weren't included as part of the original damages in the March 1, 2021 order, then that creates the reverse damages being 27.1% of the original damages. The second is the application of the correct percentage times the amount to be reduced. If the reverse damages are 27.1% of the original damages, and that percentage is then applied to the attorney's fees and punitive damages, the amounts are $68,737.66 for attorney's fees and an additional punitive damages of $14,580. However, if attorney's fees in the amount of $94,290.94 are not included in punitive damages, then the reverse amount is 8.9% of the award. If the attorney's fees are not part of punitive damages, then applying that percentage of 8.9% reduces the additional punitive damages only to the amount of $18,200. Counsel, let me pose a question. I understand all the equations you're using to figure out this issue on attorney's fees versus punitive damages, but can you point to anything in the record the court memorialized to say that punitive damages were part of, or attorney's fees were part of the punitive damages? No, I cannot. Okay, please continue. Your Honor, traditionally the American rule is that everybody pays their own attorney's fees. It's typically the issue of attorney's fees comes up in the form of punitive damages, because that is a recognized element of punitive damages. And in this particular case, the way this trial court proceeded was in that traditional pattern, in that the original damages were determined and entered in an order of March 1, 2021, and then the punitive part was then later entered in the order of July 2021. So there is nothing that I can point to that particularly points out the fact that the trial court said that punitive damages included attorney's fees, but the manner and method in which this case proceeded is consistent with attorney's fees being part of punitive damages. And I have argued in the submissions to the court that what else are punitive, excuse me, attorney's fees, other than punitive damages given the American rule is the presiding rule over all of our cases across this country. So I would suggest that finding attorney's fees as a part of the punitive damages is the most logical outcome of this case, and all of the issues that spin off of that should come out, I believe, in the favor of the way we have suggested to the court. The third issue is the commencement date for post-judgment interest. The principal issue is whether the court was merely conducting a mechanical application of this court's opinion, or whether there was more than a simple mechanical application of this court's ruling. The trial court commenced interest in several instances, as I put out in our brief, on a start date of March 1, 2021, on amounts it had not even calculated until the April 24, 2024 judgment was entered. So not only does it start long before some of these amounts were even determined, it does not comply with what I believe, as we've cited in the case law, with the rationale for when post-judgment interest should commence. So that's my argument on those three issues. I don't know if the court has any questions of me on that. Do you have any questions of me? Seeing none. Well, just to conclude then on the issues before the court, I have set forth in our brief and in our reply the judgment that we think should be entered today. Nancy wants to be able to pay this judgment. In order to do that, we need to have an exact amount, and I hope this court just enters the exact amount and says this is what you owe, so we can pay the judgment and move on. And we think that what we have presented to this court is the proper amount for this judgment to be entered. Thank you. Thank you. Mr. Ivo? Yes, Your Honors. Jeff Riva for the plaintiffs, and may it please the court and counsel, obviously we completely disagree with the concept here. What I think we need to do is we need to start with the fact that it was Justice Steigman who wrote the Rule 23, and it was probably more detailed than most opinions I've seen, and it laid everything out in minute detail. The parts about the interest that they are attacking, the Rule 23 said all those were otherwise affirmed. The only interest that was removed was what would have been attributable to that $11,000 portion of the compensatory award. So this was purely a mathematical exercise on the part of Judge Canning, and we provided the numbers for him, but they were all correct. And the point is, all Justice Steigman said is recalculate prejudgment interest. He did not say go back and redetermine it or change the factors you considered, or here's what you need to look at, or here's the four items that Mr. Byers has talked about. All he said was it's going back and Judge Canning can take out the $11,000 from compensatories and then take out proportionately what that $11,000 board of the total compensatory work. That's what he did, and if their issue as they frame in their briefs is that they think that Judge Canning didn't follow what this court did, I don't know how it could have been any other way. He did exactly what this court said that he should do. Now, and I would note that at least on that point, I mean, Nancy would have received the benefit or full benefit of what the court had ordered the first time, yank the $11,000 and yank the interest attributable to the $11,000. Now, in this issue about the attorney's fees and punitive damages, we again have another law of the case problem. Mr. Byers seems to want to rewrite Justice Steigman's ruling, and in my view of law of the cases, I don't think even this panel can rewrite Justice Steigman's ruling from the first time through on this, because what that order said is that while you were reversing the punitive damages, for another look by Judge Cadogan, the attorney's fees were completely affirmed. Now, I don't think there's been any argument made in this case by Mr. Byers that any of the calculations were wrong, that the prejudgment interest amount was calculated wrong, and what Judge Cadogan did with the punitive damages was again just take the percentage that this court reversed the compensatories by and deducted it, took the $20,000 down to $18,000 and change. Now, the point here is that, as I understand the argument, it's that attorney's fees cannot be anything other than punitive damages. Well, this court already, and that ship has sailed, this court already affirmed the entire attorney's fees award. So, to come back at this point and say that we get another crack at having a reduction of attorney's fees on an argument that wasn't presented to begin with is just plain wrong. And I guess my point there is, even the American rule that Mr. Byers talks about, the American rule says you pay fees if there's a contract or there's a statute. In Justice Steigman's order, he specifically mentioned that the probate code considers the equities and that a trial judge can award attorney's fees, not for punitive bad conduct or aggravated circumstances, just as equity may require. That's what you affirmed the first time around. This was an equitable award. It was totally separate from the punitive damage award. So, both of these first two points, I think, are foreclosed by law of the case. I don't think they were good arguments had they been made the first time through, but they certainly have no merit at this stage of the proceedings because this court already affirmed the whole fee award. I don't see how you can take an affirmed fee award and then unaffirm it somehow in a statute of appeal. Now, the third issue, which is really the only, what I consider anything particularly new, is completely controlled by case law that says if you have a remand that you take a specific amount out of a previous compensatory award, that you don't lose all of the post judgment interest. Back for however many years of appellate proceedings there were, and that's what we have here. This court again said, take out the 11,000 and take out the prejudgment interest on those amounts. Those amounts were all taken out. We started the post judgment interest. Long after what Mr. Byers is talking about us having done. It was on the amounts when they were awarded for fees and for the part of the punitive damages that Judge Cadogan reconfirmed the second time through and the prejudgment interest. So there's really nothing in this post judgment interest. I was trying to think of an example. I mean, just from a policy standpoint, I don't think we want to encourage people to just throw things into an appeal hoping they're going to get one minor victory in a huge case and then find that they've just bought themselves free money for however many years the case is on appeal. So this is not a case where Judge Steigman sent this case back for a whole new hearing on these issues. He did not send it back for another trial. He didn't send it back for any analysis really whatsoever to tell you the truth. These were rubber stamped issues on the first two issues because they were consistent with the mandate. If you go back to Mr. Byers brief, his issues are numbers one and two are did Judge Cadogan follow the mandate? And how you can say he didn't, he did exactly what Justice Steigman and the rest of the panel told him to do. And I think that on those two points, specifically, I have put in my brief that I think that this was aggravated and sanctionable conduct meant to delay this case out and I'll let the court decide how you want to handle that. But the first two issues are just complete law of the case. And even on the, as I said, on the attorney's fees issue, his own argument is self-defeating because the American rule does provide for statutory attorney's fees and that's how Judge Cadogan ruled the first time. That's how Justice Steigman ruled the second time. And again, on the post-judgment interest, it has to go back. You can't lose all your post-judgment interest on everything else just because you lost one part of it and then there were machinations for two years in the circuit court. So having said all that, I'll answer any questions that the court may have at this time. I would note that I'm well short of my time, but I remember from our luncheon, you said when you're done, sit down and stop talking. I'm already seated. So I'll stop talking. Thank you. I see no questions. Nice that you take the advice at those luncheons. Mr. Byers, rebuttal? Thank you. First off, I want to start out by saying that there are not many cases on these issues that are being presented here. I hope this court does not rule 23, whatever its opinion is, so that we could have case law on some of this because they're difficult to find. But let me spin now to the actual arguments that Mr. Riva has advanced. First off, with regard to the pre-judgment interest, I don't believe that Judge Steigman or any of the panel intended for the trial court to ignore the evidence that was admitted at trial to determine the pre-judgment interest. When the order came back to recalculate the pre-judgment interest, certainly I would expect this court to have presumed that the trial court was going to use the evidence that was actually admitted at trial in order to calculate the pre-judgment interest and not just create an artificial number with apparently assuming that every single loss had an exact five-year date prior to the trial. I just can't believe that this court did not expect Judge Cadogan to follow and base his entry of the pre-judgment calculation of interest on the evidence that was actually admitted at trial. Secondly, to the next issue as to whether or not punitive damages are part of the... Excuse me, attorney's fees are part of punitive damages, even Mr. Riva indicated in his comments just now that under the American rule, typically punitive damages do include attorney's fees, but without punitive damages, typically attorney's fees are not awarded. So I think that there is no question at least that this is an issue that needs to be decided by this court. And in good faith, we do believe and have advanced that punitive damages should be considered to include attorney's fees in this case. And the mandate of this court in Judge Steigman's opinion was to recalculate, if needed, the punitive damage award. I think that should include the amount for attorney's fees. Now, the third issue, which is the start of the interest, there's two issues in that. Number one, the interest includes actual amounts that the trial court did not determine until April 24, 2024, but backdated it all the way to March 1, 2021. That's something that is just mechanically wrong, even under Mr. Riva's argument. But secondly, there is no way to have had a crystal ball to presume what amount Judge Cadogan was going to do with all of these things in order to post the money. And that's part of what the statute says is it has to be an amount that we can post in order to stop the interest. And so since there was no amount, I think the case law is pretty clear that then the interest doesn't start until it can be posted. So, I don't have much to add after all of that, but I just think that the start date of the interest is a very important thing. Thank you. Council, with regard to the 2nd issue you just addressed, you indicated during your opening argument that it would be helpful for the court to give you specific numbers and alike. What is it about Judge Cadogan's ruling that's unclear? Because it does seem from my reading that the judge followed the mandate issued by Justice Steigman and ruled on the issues that were pending. So, what's missing? With regard to each of the issues, number 1, with regard to the prejudgment interest rate? I think generally, I mean, my concern is the court seems to have addressed the issues that were sent back down, removed damages for loss of income, reduced the prejudgment interest based upon the same accrual date, and reduced punitives in light of the reversal of the removal of damages of loss income. So, it seems the court addressed those issues, whether or not you or I agree is different, but the court did seem to address them. So, what more specificity is needed? Well, one of the things that you just stated, that the court should address the issue for the prejudgment interest with the accrual dates, I don't believe that that was in the order or the first opinion. I don't think that was that specific. Judge Steigman and his panel did not have that specific type of order entered. It said recalculate the punitive damages. So, I think when you do that, excuse me, the prejudgment interest, when you do that, you have to go to the actual evidence to recalculate the amount. Now, do I think that the trial court addressed each issue? Yes. Do I think it addressed each issue correctly? No. That is the difference. I do believe that the court had entered an order on each of the issues. Thank you. All right, counsel, thank you both. The court will take this matter under advisement and is now in recess.